FREDERICK v. PEOPLE'S BANK OF CALIFORNIA.

In re DRUM.

(Circuit Court of Appeals, Third Circuit. November 7, 1917.)

No. 2296.

BANKRUPTCY ⬥303(3)—PREFERENCES—WHAT CONSTITUTE.

In a suit to set aside, as a preference, a mortgage given by a bankrupt, evidence *held* to show that the creditor bank took the mortgage in good faith, and insufficient to show that it, or its alleged agent, who was also associated with the bankrupt, had reasonable cause to believe that the enforcement of the mortgage would effect a preference.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of the bankruptcy of R. B. Drum. The People's Bank of California filed its proof of a secured debt based on a mortgage, which claim was challenged as a preference by Elliott Frederick, trustee. From an order of the District Court allowing the claim, the trustee appeals and petitions for revision. Affirmed.

A. E. Kountz, of Pittsburgh, Pa., for appellant.

H. A. Jones, of Washington, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

PER CURIAM. In the administration, in the court below, of the bankrupt estate of R. B. Drum, the People's Bank of California filed its proof of a secured debt of $6,000, based upon a mortgage given to it September 27, 1915, by the said Drum on certain of his real estate.

The claim was challenged as an alleged illegal preference given within four months of the mortgagor's bankruptcy. On hearing, the referee held the bank had cause to believe Drum was insolvent when it accepted the mortgage, and rejected the claim. On certificate, the court below, in an opinion [1] printed in the margin, held the contrary, and reversed the referee. Thereupon the trustee took this appeal.

[1] Opinion of Orr, District Judge:

"The referee has certified to this court the question: 'Was the mortgage given to the People's Bank of California for $6,000 a voidable preference?' The following, taken from the report of the learned referee, is a proper statement of some of the facts in this case: 'R. B. Drum, for some time prior to his bankruptcy, had been engaged in business as the Allenport, Fredericktown & Granville Supply Company, operating three general stores at different points in Washington county, and on September 27, 1915, executed to the People's Bank of California, Pa., a $6,000 mortgage upon two lots of ground in the borough of California, Pa., and on the 15th day of December, 1915, made a voluntary assignment for the benefit of his creditors, and on the 7th day of January, 1916, and within four months of the execution of the $6,000 mortgage, a petition in bankruptcy was filed against him, and on the 29th day of January he was adjudged a bankrupt. The People's Bank of California, Pa., have filed a proof of secured debt in the sum of $6,000, and the trustee in bankruptcy of R. B. Drum has filed a petition to reduce this claim to a general claim on the ground that it is a voidable preference under the bankruptcy act. From the testimony it appears that at the time this bankruptcy proceeding was started, and for more than one year prior thereto, W. J. Weaver, of California, Pa., had been financially associated with Mr. Drum, and had been and was manager of the three stores of which R. B. Drum was owner, and that Mr. Weaver was more familiar with the business affairs of R. B. Drum than Mr. Drum himself. It also appears that Mr. Weaver, at the time the mortgage was executed by Mr. Drum, on September 27, 1915, and for one year prior thereto, had been a director in the People's Bank of California, Pa., and had attended the meetings of the board of directors on an average of once a week, and had been present when the matter of the mortgage to R. B. Drum had been discussed by the bank, and had been instrumental in having this mortgage taken by his bank.'

"Further material facts are as follows: Before the giving of the mortgage, and up until the time of the voluntary assignment, Mr. Drum's financial reputation was good. Although he had real estate other than that embraced in the mortgage in question, there did not appear to be any other mortgage recorded against him, nor did there appear to have been any judgments entered against the bankrupt from the 1st day of September, 1910, to the 1st day of December, 1915. So far as appears in this case, the said W. J. Weaver was and is a man of financial responsibility. It further appears that, for a considerable period prior to the giving of the mortgage, the bankrupt had an active account with the bank, in which were deposited, so far as the bank knew, the receipts from part of the business enterprises in which the bankrupt was engaged, and the average daily balances and the credit of the bankrupt were by no means inconsiderable. The said Weaver believed that the bankrupt was insolvent, and because of this belief became liable to the bank for moneys loaned to the bankrupt to an amount which, on or about the 7th of September, 1915, aggregated $10,064.18. By lending the bankrupt the credit to that amount, the said Weaver appeared upon the books of the bank to be a debtor to the bank in that sum. Some time prior to the giving of the mortgage, a bank examiner, having made an examination of the bank, called the attention of Mr. Weaver to the fact that under the law the limit of his liability to the bank would be $7,500, and that his liability exceeded that amount by the difference between such sum and the amount of the loans for which Weaver had become liable. The state of Pennsylvania, some time afterwards, called for a report of the true condition of the bank at the close of business on Sep-

Aided by a full discussion of the case by counsel, we have carefully examined the testimony and duly considered the report of the referee and the opinion of the court. On final analysis, the case turns on questions of fact, and as these questions are fully discussed by the court below in the marginal opinion, and a repetition by us would serve no useful purpose, we restrict ourselves to saying that we agree with

tember 7, 1915, and on the 16th of September, 1915, a report was made to the banking department of the state of Pennsylvania, which showed the facts as ascertained by the bank examiner. On September 23, 1915, the banking commissioner notified the bank that the loans to W. J. Weaver, a director of the bank, were in excess of the legal limit, and asked for a reply, after the matter should have been considered by the board of directors. By reason of these conditions and this demand on the part of the commissioner of banking, the proposition was made to the board of directors of the bank by Mr. Weaver that Mr. Drum should execute his mortgage to the bank for $6,000 and that the bank should treat as paid two notes upon which Weaver was liable, aggregating $4,000, in order that the loans for which Weaver was liable to the bank would be within the limit fixed by law. On October 7th following the bank, by the hand of its president, wrote to the commissioner of banking that they were complying with his request as rapidly as possible, and on the 19th of October they made further answer to the commissioner's letter of September 23d, advising him that the said W. J. Weaver, a director, 'has reduced his liabilities more than $4,000.' At the time of taking the mortgage, there was no consideration by the board of directors of any question as to Mr. Drum's financial standing. Subsequently other loans were made by the bank to Drum, and the indebtedness to the bank upon such loans, when they were greatest, aggregated $1,200.

"The referee was of the opinion that Weaver, as manager of Drum's enterprises, must have known that Drum was insolvent, because, as the referee finds, there did not appear to be any change in his financial condition after the giving of the mortgage, and, further, the referee was of the opinion that Mr. Weaver, as a director of the bank, was the agent of the bank in securing the mortgage for Mr. Drum, and that therefore the bank was affected with the knowledge that Mr. Weaver had as such agent. He therefore held that the proof of debt filed by the bank as being secured to the extent of $6,000 (the amount of the mortgage) should be reduced to a general claim, upon the ground that the mortgage was a voidable preference under the Bankruptcy Act. This court is of the opinion that the referee erred in his conclusions. In cases of this kind the burden of proof rests upon the trustee. The burden rested upon the trustee, therefore, to establish by the evidence that Weaver had knowledge of Drum's financial condition, and, next, that Weaver was the agent of the bank.

"As to Weaver's knowledge, the trustee appears to have relied upon the presumption that the manager of a business knows the financial condition of the person carrying on the business, coupled with some evidence that there was no change in Mr. Drum's financial condition between the time of giving the mortgage and the date of the voluntary assignment. The evidence relied upon in connection with such presumption is not very satisfactory, when coupled with the testimony that accounts receivable believed to have been good at the time of making the mortgage became uncollectable afterwards. It is not necessary, however, to decide the question in this case upon the insufficiency of the proof offered by the trustee in this regard. The case is without difficulty when we consider the failure of the trustee to sustain by the evidence the proposition that Weaver was the agent of the bank and that his knowledge of the condition of the bankrupt was the knowledge of the bank. If Weaver was not the agent of the bank, acting for the bank in the procuring of the mortgage in question, the bank's right to the enforcement of the mortgage cannot be destroyed simply by reason of the fact that bankruptcy followed within four months from this date, because there is no evidence whatever

the conclusion, reached by it, that the bank took this mortgage in good faith; and we go a step further, and find the fact to be that Weaver, the alleged agent of the bank, as well as the bank itself, then had no reasonable cause to believe that the enforcement of such mortgage would effect a preference.

The decree below will therefore be affirmed.

that anybody else connected with the bank than Weaver, and even with regard to him it is doubtful, had any reason to believe that Drum was insolvent. If Weaver knew of the insolvency of Drum, he was interested in having Drum's liabilities to the bank so rearranged that he (Weaver) should not be called upon to pay them. The demand of the state department that Weaver's liabilities to the bank should be reduced to the limit fixed by law imposed upon Weaver the duty of reducing his liabilities to the bank, and imposed upon the bank the duty to require Weaver to reduce such liabilities. We see at once that Weaver's interests and the interests of the bank are not wholly in common, so far as their relations with Drum, the bankrupt, appear. If Weaver did have knowledge that Drum was insolvent, it was to his interest to conceal the fact from the bank until he should have been relieved of some of his liabilities to the bank by reason of his association with Drum upon the paper held by the bank. It cannot be assumed that the bank, in view of Weaver's solvency, would have surrendered its right to proceed against Weaver in consideration of a mortgage by Drum which might be deemed an unlawful preference. The law regards an officer, and especially a director, who is personally interested in a transaction, as trying to conceal his knowledge from the bank, because his interest will be better served by keeping silent. In other words, in cases like the present, it is not to be supposed that a director of a corporation will tell about matters in which his personal interest draws the other way. A citation of authorities supporting these general statements of the law would serve no good purpose, because the question whether or not the knowledge of a director may be imputable to his corporation depends upon the particular facts in each case.

"In the case at bar, there is no evidence which justifies any other conclusion than that which has been reached by this court. The exceptions to the report of the referee must be sustained, the certified question must be answered 'No,' and the claim of the People's Bank of California, Pa., should be allowed."